EXCESSIVE TRADING PRACTICES. The MFS funds do not permit market-timing or other excessive trading practices that may disrupt portfolio management strategies and may harm fund performance.

36.    The Prospectuses failed to disclose and misrepresented the following material and adverse facts:

(a)    that defendants had entered into an agreement allowing the John Doe Defendants to time their trading of the MFS Funds shares;

(b)    that, pursuant to that agreement, the John Doe Defendants regularly timed their trading in the MFS Funds shares;

(c)    that, contrary to the express representations in the Prospectuses, the MFS Funds enforced their policy against frequent traders selectively, *i.e.*, they did not enforce it against the John Doe Defendants;

(d)    that the Fund Defendants regularly allowed the John Doe Defendants to engage in trades that were disruptive to the efficient management of the MFS Funds and/or increased the MFS Funds' costs and thereby reduced the MFS Funds' actual performance; and

(e)    the Prospectuses failed to disclose that, pursuant to the unlawful agreements, the Fund Defendants benefited financially at the expense of the MFS Funds investors.

## Defendants' Scheme and Fraudulent Course of Business

37.    Each defendant is liable for (i) making false statements, or for failing to disclose adverse facts while selling shares of the MFS Funds, and/or (ii) participating in a scheme to defraud and/or a course of business that operated as a fraud or deceit on purchasers of the MFS Funds shares during the Class Period (the "Wrongful Conduct"). This Wrongful Conduct enabled defendants to profit at the expense of plaintiffs and other Class members.

## Additional Scienter Allegations

38.    As alleged herein, defendants acted with scienter in that defendants knew that the

public documents and statements issued or disseminated in the name of the MFS Funds were

materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their

receipt of information reflecting the true facts regarding MFS Funds, their control over, and/or

receipt and/or modification of MFS Funds' allegedly materially misleading misstatements and/or

their associations with the MFS Funds which made them privy to confidential proprietary

information concerning the MFS Funds, participated in the fraudulent scheme alleged herein.

39.    Additionally, the Fund Defendants were highly motivated to allow and facilitate

the wrongful conduct alleged herein and participated in and/or had actual knowledge of the

fraudulent conduct alleged herein. In exchange for allowing the unlawful practices alleged

herein, the Fund Defendants, among other things, received increased management fees as a result

of the scheme alleged herein. Moreover, mutual fund managers can easily spot market timing in

their mutual funds simply by observing the trading activity within accounts; if the account, or

persons controlling more than one account, engage in frequent trades the manager will know that

they are engaging in market timing. The Spitzer Complaint emphasizes the ease with which the

practice can be spotted by fund managers or their employees, as follows:

> Mutual fund managers are aware of the damaging effect that timers have on their funds.
> And while the effects on individual shareholders may be small once they are spread out
> over all the investors in a fund, their aggregate impact is not: for example, one recent
> study estimates that U.S. mutual funds lose $4 billion each year to timers. Eric Zitzewitz,
> Who Cares About Shareholders? Arbitrage-Proofing Mutual Funds (October 2002) 35, at
> http://faculty-gsb.stanford.edu/zitzewitz/Research/arbitrage1002.pdf. While it is virtually
> impossible for fund managers to identify every timing trade, large movements in and out

of funds -- like those made by Canary -- are easy for managers to spot. And mutual fund managers have tools to fight back against timers. [Emphasis in original].

40.     The John Doe Defendants were motivated to participate in the wrongful scheme by the enormous profits they derived thereby. They systematically pursued the scheme with full knowledge of its consequences to other investors.

## FIRST CLAIM

### Against the MFS Funds Registrants For Violations of Section 11 Of The Securities Act

41.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set fort herein, except that, for purposes of this claim, plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct and otherwise incorporates the allegations contained above.

42.     This claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class against the Registrants.

43.     The Registrants are statutorily liable under Section 11. The Registrants issued, caused to be issued and participated in the issuance of the materially false and misleading written statements and/or omissions of material facts that were contained in the Prospectuses.

44.     Prior to purchasing units of the MFS Total Return Fund, MFS Value Fund, and MFS Fixed Fund, plaintiffs were provided the appropriate Prospectus and, similarly, prior to purchasing units of each of the other MFS Funds, all Class members likewise received the appropriate prospectus.  Plaintiffs and other Class members purchased shares of the MFS Funds traceable to the false and misleading Prospectuses.

45.     As set forth herein, the statements contained in the Prospectuses were materially false and misleading for a number of reasons, including that they stated that it was the practice of the MFS Funds to monitor and take steps to prevent timed trading because of its adverse effect

on fund investors, when, in fact, the John Doe Defendants were allowed to engage in timed trading. The Prospectuses failed to disclose and misrepresented, *inter alia*, the following material and adverse facts:

      (a)    that defendants had entered into an agreement allowing the John Doe Defendants to time their trading of the MFS Funds shares;

      (b)    that, pursuant to that agreement, the John Doe Defendants regularly timed their trading in the MFS Funds shares;

      (c)    that, contrary to the express representations in the Prospectuses, the MFS Funds enforced their policy against frequent traders selectively, *i.e.*, they did not enforce it against the John Doe Defendants;

      (d)    that the Fund Defendants regularly allowed the John Doe Defendants to engage in trades that were disruptive to the efficient management of the MFS Funds and/or increased the MFS Funds' costs and thereby reduced the MFS Funds' actual performance; and

      (e)    the Prospectuses failed to disclose that, pursuant to the unlawful agreements, the Fund Defendants benefited financially at the expense of the MFS Funds investors.

46.    Plaintiffs and the Class have sustained damages. The value of the MFS Funds shares decreased substantially subsequent to and due to defendants' violations.

47.    At the time they purchased the MFS Funds shares traceable to the defective Prospectuses, plaintiffs and Class members were without knowledge of the facts concerning the false and misleading statements or omission alleged herein and could not reasonably have possessed such knowledge. This claim was brought within the applicable statute of limitations.

## SECOND CLAIM

**Against Sun Life and MFS Company as Control Persons of the MFS Funds Registrants
For Violations of Section 15 of the Securities Act**

48.     Plaintiffs repeat and reallege each and every allegation contained above, except that for purposes of this claim, plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional reckless misconduct and otherwise incorporates the allegations contained above.

49.     This Claim is brought pursuant to Section 15 of the Securities Act against Sun Life and MFS Company, as control persons of the MFS Funds Registrants. It is appropriate to treat these defendants as a group for pleading purposes and to presume that the false, misleading, and incomplete information conveyed in the Registrants' Prospectuses, public filings, press releases and other publications are the collective actions of Sun Life and MFS Company.

50.     The MFS Funds Registrants are each liable under Section 11 of the Securities Act as set forth herein.

51.     Each of Sun Life and MFS Company was a "control person" of MFS Funds Registrants within the meaning of Section 15 of the Securities Act, by virtue of their position of operational control and/or authority over such funds -- Sun Life and MFS Company directly and indirectly, had the power and authority, and exercised the same, to cause MFS Funds Registrants to engage in the wrongful conduct complained of herein.  Sun Life and MFS Company issued, caused to be issued, and participated in the issuance of materially false and misleading statements in the Prospectuses.

52.     Pursuant to Section 15 of the Securities Act, by reason of the foregoing, Sun Life and MFS Company are liable to plaintiffs to the same extent as are each of the Registrants for their primary violations of Section 11 of the Securities Act.

17

53.    By virtue of the foregoing, plaintiffs and other Class members are entitled to damages against Sun Life and MFS Company.

## VIOLATIONS OF THE EXCHANGE ACT

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD-ON-THE-MARKET DOCTRINE

54.    At all relevant times, the market for MFS Funds was efficient for the following reasons, among others:

(a)    The MFS Funds met the requirements for listing, and were listed and actively bought and sold through a highly efficient and automated market;

(b)    As regulated entities, periodic public reports concerning the MFS Funds were regularly filed with the SEC;

(c)    Persons associated with the MFS Funds regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    The MFS Funds were followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

55.    As a result of the foregoing, the market for the MFS Funds promptly digested current information regarding MFS Funds from all publicly available sources and reflected such information in the respective MFS Funds' NAV. Investors who purchased or otherwise acquired shares or interests in the MFS Funds relied on the integrity of the market for such securities. Under these circumstances, all purchasers of the MFS Funds during the Class Period suffered

18

similar injury through their purchase or acquisition of MFS Funds securities at distorted prices that did not reflect the risks and costs of the continuing course of conduct alleged herein, and a presumption of reliance applies.

## THIRD CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

56.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein except for Claims brought pursuant to the Securities Act.

57.     During the Class Period, each of the defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did deceive the investing public, including plaintiffs and other Class members, as alleged herein and cause plaintiffs and other members of the Class to purchase MFS Funds shares or interests at distorted prices and to otherwise suffer damages.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

58.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the MFS Funds' securities, including plaintiffs and other members of the Class, in an effort to enrich themselves through undisclosed manipulative trading tactics by which they wrongfully appropriated MFS Funds' assets and otherwise distorted the pricing of their securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All defendants are sued as primary participants in the wrongful and illegal conduct and scheme charged herein.

19

59.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the MFS Funds' operations, as specified herein.

60.    These defendants employed devices, schemes and artifices to defraud and a course of conduct and scheme as alleged herein to unlawfully manipulate and profit from secretly timed trading and thereby engaged in transactions, practices and a course of business which operated as a fraud and deceit upon plaintiffs and members of the Class.

61.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the truth.

62.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of MFS Funds securities were distorted during the Class Period such that they did not reflect the risks and costs of the continuing course of conduct alleged herein. In ignorance of these facts that market prices of the shares were distorted, and relying directly or indirectly on the false and misleading statements made by the Fund Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiffs and the other members of the Class acquired the shares or interests in the MFS Funds during the Class Period at distorted prices and were damaged thereby.

63.     At the time of said misrepresentations and omissions, plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiffs and other members of the Class and the marketplace known of the truth concerning the MFS Funds' operations, which were not disclosed by defendants, plaintiffs and other members of the Class would not have purchased or otherwise acquired their shares or, if they had acquired such shares or other interests during the Class Period, they would not have done so at the distorted prices which they paid.

64.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the MFS Funds shares during the Class Period.

## FOURTH CLAIM

### Against Sun Life (as a Control Person of MFS Company, MFS Funds Registrants and the MFS Funds), MFS Company (as a Control Person of MFS Funds Registrants and MFS Funds), MFS Funds Registrants (as a Control Person of MFS Funds) For Violations of Section 20(a) of the Exchange Act

66.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein except for Claims brought pursuant to the Securities Act.

67.     This Claim is brought pursuant to Section 20(a) of the Exchange Act against Sun Life, as a control person of MFS Company, MFS Funds Registrants and the MFS Funds; MFS Company as a control person of MFS Funds Registrants and the MFS Funds; and MFS Funds Registrants as a control person of the MFS Funds.

68.     It is appropriate to treat these defendants as a group for pleading purposes and to presume that the materially false, misleading, and incomplete information conveyed in the MFS

21

Funds' public filings, press releases and other publications are the collective actions of Sun Life, MFS Company, MFS Funds Registrants, and MFS Funds.

69.     Each of Sun Life, MFS Company, and MFS Funds Registrants acted as controlling persons of the MFS Funds within the meaning of Section 20(a) of the Exchange Act for the reasons alleged herein.  By virtue of their operational and management control of the MFS Funds' respective businesses and systematic involvement in the fraudulent scheme alleged herein, Sun Life, MFS Company, and MFS Funds Registrants each had the power to influence and control and did influence and control, directly or indirectly, the decision-making and actions of the MFS Funds, including the content and dissemination of the various statements which plaintiffs contend are false and misleading.  Sun Life, MFS Company, and MFS Funds Registrants had the ability to prevent the issuance of the statements alleged to be false and misleading or cause such statements to be corrected.

70.     In particular, each of Sun Life, MFS Company, and MFS Funds Registrants had direct and supervisory involvement in the operations of the MFS Funds and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

71.     As set forth above, Sun Life, MFS Company, MFS Funds Registrants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, Sun Life, MFS Company, MFS Funds Registrants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiffs and other members of the Class suffered damages in connection with their purchases of MFS Funds securities during the Class Period.

## VIOLATIONS OF THE INVESTMENT ADVISERS ACT

### FIFTH CLAIM

**For Violations of Section 206 of The Investment Advisers
Act of 1940 Against MFS Company
[15 U.S.C. §80b-6 and 15 U.S.C. §80b-15]**

72.    Plaintiffs repeat and reallege each and every allegation contained above as if fully
set forth herein.

73.    This Count is based upon Section 215 of the Investment Advisers Act, 15 U.S.C.
§80b-15.

74.    MFS Company served as an "investment adviser" to plaintiffs and other members
of the Class pursuant to the Investment Advisers Act.

75.    As a fiduciary pursuant to the Investment Advisers Act, MFS Company was
required to serve plaintiffs and other members of the Class in a manner in accordance with the
federal fiduciary standards set forth in Section 206 of the Investment Advisers Act, 15 U.S.C.
§80b-6, governing the conduct of investment advisers.

76.    During the Class Period, MFS Company breached its fiduciary duties owed to
plaintiffs and the other members of the Class by engaging in a deceptive contrivance, scheme,
practice and course of conduct pursuant to which it knowingly and/or recklessly engaged in acts,
transactions, practices and courses of business which operated as a fraud upon plaintiffs and
other members of the Class. As detailed above, MFS Company allowed the John Doe
Defendants to secretly engage in timed trading of the MFS Funds shares. The purposes and
effect of said scheme, practice and course of conduct was to enrich MFS Company, among other
defendants, at the expense of plaintiffs and other members of the Class.

23

77.    MFS Company breached its fiduciary duties owed to plaintiffs and other Class members by engaging in the aforesaid transactions, practices and courses of business knowingly or recklessly so as to constitute a deceit and fraud upon plaintiffs and the Class members.

78.    MFS Company is liable as a direct participant in the wrongs complained of herein. MFS Company, because of its position of authority and control over the MFS Funds was able to and did: (1) control the content of the Prospectuses; and (2) control the operations of the MFS Funds.

79.    MFS Company had a duty to (1) disseminate accurate and truthful information with respect to the MFS Funds; and (2) truthfully and uniformly act in accordance with its stated policies and fiduciary responsibilities to plaintiffs and members of the Class. MFS Company participated in the wrongdoing complained of herein in order to prevent plaintiffs and other members of the Class from knowing of MFS Company's breaches of fiduciary duties including: (1) increasing its profitability at plaintiffs' and other members of the Class' expense by allowing the John Doe Defendants to secretly time their trading of the MFS Funds shares; and (2) placing its interests ahead of the interests of plaintiffs and other members of the Class.

80.    As a result of MFS Company's multiple breaches of its fiduciary duties owed to plaintiffs and other members of the Class, plaintiffs and other Class members were damaged.

81.    Plaintiffs and other Class members are entitled to rescind their investment advisory contracts with MFS Company and recover all fees paid in connection with their enrollment pursuant to such agreements.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray for relief and judgment, as follows:

(a)    Determining that this action is a proper class action and appointing plaintiffs as Lead Plaintiff and their counsel as Lead Counsel for the Class and certifying them as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    awarding plaintiffs and the Class rescission of their contract with MFS Company and recovery of all fees paid to MFS Company pursuant to such agreement;

(d)    Awarding plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(e)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated:        December 17, 2003

**MOULTON & GANS, P.C.**

By: _Nancy Freeman Gans_
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA  02109-4216
Telephone:  (617) 369-7979

25

**MILBERG WEISS BERSHAD
HYNES & LERACH LLP**
Melvyn I. Weiss
Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza
New York, NY  10119-0165
Telephone:  (212) 594-5300

**LAW OFFICES OF CHARLES J.
PIVEN, P.A.**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland  21202
Telephone:  (410) 986-0036

**RABIN   MURRAY   &   FRANK,
LLP**
Brian Murray
Eric J. Belfi
275 Madison Avenue
New York, NY  10016
(212) 682-1818
(212) 682-1892

**Attorneys for Plaintiffs**